# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Newnan

JAN 2 0 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

Bennon L. Prine, Jr.
    Plaintiff

Vs.

Chailland Inc.
Hospital Ambulance LLC
Lumbermen's Underwriting Alliance
Donald Walters
John and/or Jane Doe
Edward "Dan" Wingard
Cambridge Integrated Services
Robin DeMello
Ann Morgan-Mitchell
    Defendants

Case # 3 09-CV- 004 JTC

Jury Trial Demanded

## COMPLAINT

COMES NOW, Bennon L. Prine, Jr. ("Plaintiff"), and complains against Defendants, and alleges:

### Overview

1.

This is a complex civil action for RICO remedies authorized by the federal statutes at 18 U.S.C. 1964 *et seq.*; for declaratory, injunctive relief; for actual,

consequential and exemplary damages; and for all other relief which this Court deems just and proper under all circumstances which have occasioned this Initial Complaint.

2.

The primary cause of this action is a widespread criminal *enterprise* engaged in a *pattern of racketeering activity* across State lines, and a conspiracy to engage in *racketeering activity* involving numerous RICO predicate acts during the past four (4) calendar years.

3.

The State of Georgia predicate acts alleged here cluster around, O.C.G.A. § 16-14-3(9)(A)(xv) … Sections 16-10-20… relating to perjury and other falsifications; (O.C.G.A.§ 16-10-20. *False statements and writings, concealment of facts, False statements and writings, concealment of facts, and fraudulent documents in matters within jurisdiction of state or political subdivisions.)*

4.

Other RICO predicate acts, Federal in nature, although *appearing* incidental events, were actually part of the overall conspiracy and *pattern of racketeering activity* alleged herein, *e.g.* mail fraud and wire fraud.

5.

The primary objective of the racketeering *enterprise* has been t o inflict severe and sustained economic hardship upon Plaintiff, and other similarly situated and aggrieved individuals, with the intent of impairing, obstructing, preventing, and discouraging Plaintiff from receiving Georgia Workers Compensation benefits rightly entitled to, after suffering a compensable injury during employment, and to therefore pay workers compensation insurance premiums at a lower rate than a true loss history would permit (Providing false information for the purpose of receiving lower premiums is commonly referred to as insurance premium fraud.)

6.

The Federal and State claims alleged share a common chain and nucleus of evidence, and both they and these claims rely on the findings and conclusions of each other for resolution. All claims are separate and distinct from each other and any Workers Compensation Entitlement.

7.

Such conduct will likely continue into the future, and other victims added, unless this court acts decisively to stop it.

**Jurisdiction and Venue**

8.

This Court has subject matter jurisdiction over this case pursuant to 18 U.S.C §1964(c), 28 U.S .C. § 1332, 28 U.S.C. § 1331 (federal question) and 28 U.S.C. $ 1367 (ancillary jurisdiction).

9.

Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (d) because a substantial part of the events or omissions giving rise to the claims occurred in this district. In addition, venue is proper in this district with respect to all of the individual Defendants pursuant to 18 U.S.C. § 1965(a) because all of the individual Defendants conduct their affairs in this district.

10.

The amount in controversy is over $75,000.

**Parties**

11.

Plaintiff is an adult male living and working in the state of Georgia. He is a professional paramedic, as defined in O.C.G.A. 34-11-2(16). His duties, as it relates to this case, were to operate motor vehicles and to provide necessary medical care to patients found at locations, as he may be dispatched to. Such locations included, by way of example and not all-inclusive, public streets,

4

highways and through fares, private residences, public and private buildings, hospitals, and nursing homes. Patients were transported to and from, by way of example and not all-inclusive, local and out-of-state hospitals, residences, nursing homes, doctor's offices, and at least once an airliner cabin (Delta Airlines) for overseas (England) transport. Plaintiff is a transportation worker whose work affects interstate and foreign commerce.

12.

Emergency Medical Technicians ("EMT's") of all levels, Paramedic is the highest level, require adherence to, and training in accordance with, the laws, rules, and regulations, of the U.S. Department of Transportation, at the Federal level, and the Georgia Department of Human Resources, at the State level.

13.

Plaintiff gives notice that numerous individuals have been aggrieved and injured in the herein complained of schemes. Each is entitled to recovery under RICO statutes, and may wish to directly participate in the prosecution of these claims. As such, Class Action status may be necessary as this matter proceeds. Only through discovery will contact information and names of other aggrieved individuals become available.

14.

Chailland, Inc. ("Chailland") is a foreign for Profit Corporation, doing business in Georgia. Chailland has its corporate headquarters in Metairie, LA. Chailland may be served by service on its registered agent for service of process, Edward Wingard, at 305 Lee Street, Fayetteville, GA 30215.

15.

Chailland is a Professional Employer Organization ("PEO") as defined in O.C.G.A. § 34-8-32. Chailland provides employees to various companies throughout several states, including Georgia, on a long-term leased basis. Chailland hires, terminates, reserves a right of direction, pays, handles administrative functions, and is the legal employer for all Governmental functions. Chailland is Plaintiff's immediate employer. Chailland's business operations affect interstate commerce.

16.

Hospital Ambulance, LLC ("HA") is a for-profit Georgia Corporation with its principal place of business in Fayetteville, GA. HA may be served by service on its registered agent for service of process, Edward Wingard, at 305 Lee Street, Fayetteville, GA 30215.

17.

HA is an ambulance service as defined in O.C.G.A. 34-11-2(4). HA provides emergency care and transportation on the public streets and highways of this state, and out of this state, for wounded, injured, sick, invalid, or incapacitated human beings to or from places where medical or hospital care is furnished; HA also provides equipment and crews to other states in times of natural disaster for the purpose of augmenting local ambulance services capacity.   HA is a transportation business whose operations affect interstate and foreign commerce, and meets the definition of, "common carrier."

18.

Most, if not all, of the EMT's and Paramedics providing services on behalf of HA are leased from Chailland.  HA management personnel are also agents, representatives, and/ or employees of Chailland for most of the usual day-to-day interaction with Chailland employees.  As HA management serves two masters, it is significant in this matter to ascertain who each is representing at a particular time.

19.

Lumbermen's Underwriting Alliance (Lumbermen) is an insurance company providing insurance as defined in O.C.G.A. 34-1-2(2).  Lumbermen is a foreign for Profit Corporation doing business in the state of Georgia.  Lumbermen may be

may be served by service on its registered agent for service of process, S.D. Mauritz, 1025 Cobb Place Blvd NW, Ste 201 Kennesaw GA 30144.  Lumbermen business operations affect interstate commerce.

20.

Cambridge Integrated Services Group, Inc. ("Cambridge") is a foreign for Profit Corporation doing business in the state of Georgia as an insurance servicing agent.  They are the servicing agent for Lumbermen.  Cambridge may be may be served by service on its registered agent for service of process, Corporation Service Company, 40 Technology Parkway South, #300, Norcross GA 30092.

21.

Robin DeMello ("DeMello") is an employee/ agent of Cambridge and handles Lumbermen affairs as it applies to this matter. Her professional, individual, and fiduciary responsibilities are being questioned in this matter.  As an employee of Cambridge, she may be served through Cambridge's agent for service.

22.

Ann Morgan-Mitchell ("Mitchell") is an employee/ agent of Chailland and handles Chailland's affairs as it applies to this matter. Her professional, individual,

and fiduciary responsibilities are being questioned in this matter.  As an employee of Chailland, she may be served through Chailland 's agent for service.

23.

Edward "Dan" Wingard ("Wingard") is Executive Director of Operations for HA and "is responsible for the day-to-day operations." His professional, individual, and fiduciary responsibilities are being questioned in this matter.  He may be served at 305 Lee Street, Fayetteville, GA 30215.

24.

Donald Walters, ("Walters") is the Director of Operations for HA and is responsible for day-to-day operations.  His responsibilities are subordinate to Wingard.  His professional, personal, and fiduciary, responsibilities and motives are being questioned in this matter.  He may be served through HA's registered agent for service of process, Edward Wingard, at 305 Lee Street, Fayetteville, GA 30215, or personally at 181 Upper Riverdale Rd SW Ste A6, Riverdale, GA 30274.

25.

John and/ or Jane Doe, ("Doe") There are other individuals who have assisted in all schemes and conduct complained of herein.  Their names are unknown to plaintiff and will be added when their true identity becomes known.

## Related Procedural History

26.

On January 10, 2008, Plaintiff served upon the Georgia State Board of Workers Compensation ("SBWC"), HA, Chailland, and Lumbermen (By and through their servicing agent Cambridge) SBWC form WC-14 Notice of Claim.

27.

Such Notice is to toll the statute of limitations for a workplace injury.

28.

Filing said notice is not an initiation of a legal action.

29.

Prior to the initiation of legal action, the SBWC allows each party to request certain information from the other party through the filing and service of board form WC-102 Request for Documents to Parties.   As each employer was expected to have different pertinent information, this form was filed on both employers. Such requests may be enforced by Motion to SBWC.

30.

HA and Lumbermen retained an attorney to advise them with this claim.

31.

Relying on SBWC form 102 (Notice of Representation of any Party other than a Claimant or Employee), verbally asking HA's and Lumbermen's attorney of record who their clients were in this matter, and a written request to provide proper written notice if this firm also represented Chailland, no support was found that Chailland had in any manner made an appearance in this matter, or was represented by legal counsel.  Plaintiff then filed and served form WC-102 on both employers

32.

HA and Lumbermen responded through their attorney of record.  Chailland did not respond.  Subsequentially Plaintiff filed a Motion to Compel, to obtain the requested information, and a Motion for referral to Georgia Bureau of Investigation for Investigation, for the purpose of placing SBWC on notice of employers illegal conduct, and allow them disclosure of said illegal conduct for the purpose of investigating and assessing penalties.

33.

Said Claim, Motion, Response, and Court Order, is made a part of this complaint by reference.

34.

11

The Judge decreed that Plaintiff had suffered a compensable injury, but refused to address the other issues without an evidentiary hearing, to take place after the initiation of legal action.

**History, Facts, Predicate Acts, and Modus Operandi of RICO Conduct**

35.

Plaintiff is acting as a Private Attorney General in this matter.

36.

A Private Attorney General is not required to be an attorney or member of the Bar.

37.

By information and belief, Employers fail to properly report injuries as required by law, or significantly under report them.

38.

By information and belief, other than 7 weeks-worth checks in 18 months paid to Plaintiff, Employers have never paid lost-time benefits, even though at least three other injured employees were entitled to it.

39.

By information and belief, Employers have never paid mileage reimbursement for injured workers medical care, as required by law.

40.

Plaintiff has standing in this matter as he has witnessed the conduct and been deprived of compensation, and had medical care delayed, as a result of defendants actions, and violations of at least 3 of the predicate acts as defined in 18 U.S.C. §1961(1) and/ or O.C.G.A. § 16-14-3(9)(A)(xv).

41.

Defendants' actions are proximate cause of injury to Plaintiff's "business or property." Among other things, Plaintiff had reason to expect medical care would be offered without hindrance and workers compensation benefits would be paid, timely, in accordance with applicable Georgia law. Medical care and treatment has been unnecessarily hindered or denied. Initially benefits were denied due to the intentional delay in reporting this loss-time injury (8 weeks instead of less than 3 weeks) and then the fraudulent assertions proffered to the insurance company through the mailed, or wired, SBWC form WC-1 (This document was first sent to Chailland and then to Lumbermen.) This injury was caused by three or more of the predicate acts as defined in 18 U.S.C. §1961(1) and O.C.G.A. § 16-14-3(9)(A)(xv). Plaintiff was the intended target of defendants' conduct.

42.

Members of Georgia's workforce sustain injuries for many reasons. As a result, Georgia Law now requires employers with 3 or more workers to either purchase workers compensation insurance for such contingencies, or prove sufficient f unds to d ischarge it's obligations owed to i njured workers without having insurance.

43.

SBWC regulations require a number of forms to be filed when a worker is injured, has a "change-of-condition," money benefits are paid, money benefits are ceased, or if liability is controverted, so as this governmental body may properly discharge it's duties. Failure to file, and filing fraudulent documents, may result in fines and incarceration. (O.C.G.A. § 34-9-18, O.C.G.A. § 34-9-19, and O.C.G.A.§ 16-10-20.)

44.

The cost of this insurance is based on many factors, including loss history, and nature/ risk of an employer's operations.

45.

By fraudulently depriving employees of immediate and future medical care, loss-time compensation, and change-of-condition benefits, Defendants can lower workers compensation insurance premiums, and future benefits payouts.

46.

Should a company be required to purchase workers compensation insurance, the premiums can have a staggering impact on the profitability of higher risk businesses.

47.

Defendants can get policies issued for less than the comparable premium rate by falsifying documents as it relates to employee injuries.

48.

Defendants benefit from lower workers compensation premiums, and lower future payout liability.

49.

HA is a person within the meaning of 18 U.S.C. §§ 1961(3) and O.C.G.A. §16-1-3(12).

50.

Chailland is a person within the meaning of 18 U.S.C. § 1961(3) and O.C.G.A. §16-1-3(12).

15

51.

Cambridge is a person within the meaning of 18 U.S.C. § 1961(3) and O.C.G.A. §16-1-3(12).

52.

Lumbermen is a person within the meaning of 18 U.S.C. § 1961(3) and O.C.G.A. §16-1-3(12).

**Violation of O.C.G.A. §16-14-4(a) of the "Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act."**

53.

HA and Chailland, inclusive of it's agents and management staff, including Walters, Wingard, Mitchell, Doe (Employers) working together outside of a legal contract, conspire and work in collusion, for the common goal of preventing the SBWC and workers compensation insurers from learning the true number and severity of injuries their employees incur, thereby artificially (through fraudulent means) lowering workers compensation benefit payouts for the purpose of lowering workers compensation premiums, and therefore increasing corporate profitability, and securing better personal perks - including higher personal wages and job security. These unlawful profits, or unjust enrichment, are in the thousands

of dollars each year.  Georgia makes illegal these activities in O.C.G.A. §16-14-4
of the "Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act."

54.

The necessary elements for a criminal conviction and a civil finding of
liability are as follows:

a)      Two or more Separate Entities and Modus Operandi:  Chailland and
HA are both incorporated businesses maintaining a legal and contractual
relationship.  With the aid, direction, control, guidance, and influence, of
their agents, employees, and managerial staff, conspiring and working in
collusion, they routinely exceeded the legal boundaries when an employee
was injured.  When an employee was injured and sought medical treatment,
HA would present themselves as sole employers, and Chailland would
present itself as the workers compensation carrier.  If needed, Chailland
would hire a company named "Risk Savers" (Risk Savers is not registered to
do business in Georgia) as their case manager, to add to the appearance of
legitimacy.  Neither Chailland nor HA are self-insured. Using this scheme,
employers were in a position to directly affect treatment options (for all
intents and purposes, injured workers would wrongly assume that the lack of
care was the medical providers decision or that the medical providers

17

choices were viewed as unwarranted by insurers), intercept all bills, inquiries, and requests for authorization for treatments, thereby cloaking injuries in a cloud of secrecy far away from the knowledge of workers compensation insurers and the SBWC.

b)      Two or more aggrieved parties: Plaintiff has knowledge of 3 other employees, more exist but their names are unknown to Plaintiff, all are EMT's who were injured while on duty, that lost work time as a result of these injuries, and did not receive any statutory mandated compensation.

c)      Predicate Act:  O.C.G.A. § 16-14-3(9)(A) "Racketeering activity" means to commit… O.C.G.A. § 16-14-3(9)(A)(xv) … Sections 16-10-20… relating to perjury and other falsifications;

O.C.G.A.§ 16-10-20. *False statements and writings, concealment of facts, and fraudulent documents in matters within jurisdiction of state or political subdivisions*

*A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing*

18

*or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.*

55.

Though there are several laws violated in this scheme, all of which will be plead after investigation, for brevity, Claimant shows the court that O.C.G.A.§ 34-9-12 requires:

*...Within ten days after notice, as provided in Code Section 34-9-80, of the occurrence of an injury to an employee requiring medical or surgical treatment or causing his absence from work for more than seven days, a report thereof shall be made in writing and mailed to the board on blanks to be procured from the board for this purpose.*

The SBWC promulgated form WC-1 for this purpose.  This form is required for all loss time injuries and must be completed truthfully, accurately, and immediately upon notification of a workplace injury.  Though the Board Rules do not

19

specifically define "immediately" it does later indicate that a copy shall be sent to the insurance company, who will within 21 days of injury send a copy to an injured employee. The insurance company then is required to send it to SBWC. Georgia recognizes the falsehood to have occurred when the document is uttered. Likewise, by failing to file the WC-1 as required, Employers have willfully, concealed and covered up, within the meaning of O.C.G.A.§ 16-10-20. (Conscious indifference is the equivalent of willfulness.) (In the instant case, Defendants fraudulently uttered several issues, the most obvious is the number of hours worked each week. By fraudulently lowering the actual number of hours usually worked each week, any loss time benefits would be paid at a lower rate, or none at all.)

56.

Pattern of racketeering activity: The multiple acts alleged above have occurred in the last 4 years in the furtherance of the same scheme, against the same class of workers, without abatement, and present a distinct threat of continuing activity.

57.

Pecuniary goal: Workers Compensation rates for ambulance service workers have historically been some of the highest in the insurance industry. With

a payroll approaching 4 million dollars a year, each 1% reduction is equal to $40,000 unjust enrichment per year.

## 58.

Employers have acquired and maintained an interest in and control of personal property, including money, through a pattern of racketeering activity.

## 59.

Plaintiff has been aggrieved and injured by reason of Defendants' violations of O.C.G.A. § 16-14-4(a) and is entitled to recover three times the actual damages sustained, plus costs, and reasonable attorneys fees.

## 60.

Employers' actions show willful misconduct, malice, fraud, wantonness, oppression and an entire want of care that would raise the presumption of conscious indifference to consequences, and specific intent to cause harm, entitling plaintiff to receive punitive damages sufficient to deter, penalize or punish Employers.

## 61.

Plaintiff is also an aggrieved person within the meaning of O.C.G.A. § 16-14-6(b). As a result, Plaintiff is entitled to appropriate preliminary and permanent injunctive relief.

62.

Pursuant to O.C.G.A. § 16-14-6(a), plaintiff asks the Court to issue appropriate orders and judgment requiring Employers to cease its illegal conduct and imposing reasonable restrictions upon Employers future activities sufficient to prohibit future violations of the law.

**Violation of O.C.G.A. 16-4-3(9)(A)(xxix) with reference to 18 U.S.C. § 1341 (relating to mail fraud), and section 1343 (relating to wire fraud) and violation of U.S.C. §§ 1341 and 1343 (relating to mail and wire fraud.)**

63.

Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1- 62 as if fully restated hereinafter.

64.

Pursuant to their scheme, Defendants could foresee that the U.S. Postal Service and interstate wires would be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343, and Georgia Statute § O.C.G.A. 16-4-3(9)(A)(xxix). In particular, Defendants could foresee that the U.S. Postal Service and interstate wires would be used to receive and/or deliver, *inter*

*alia,* facsimile coversheets, letters containing or including SBWC forms, medical updates, billing forms and replies and other correspondence among and between the Defendants, m edical providers, billing a gents, c ase m anagers, S BWC, a nd Plaintiff.

### 65.

Defendants a cting singularly a nd in concert, personally o r through their agents, as co-conspirators, or as aiders and abettors, used the U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out Defendants' scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343, and Georgia Statute § O.C.G.A. 16-4-3(9)(A)(xxix).

### 66.

It is not possible for Plaintiff to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed Defendants' scheme because the particulars of such communications are within the exclusive control, and within the exclusive knowledge of Defendants, and/or other presently unknown persons. Pursuant to Rule 11(b)(3), Fed.R.Civ.P. additional evidence of other criminal acts by each Defendant, including, among others, mail and wire fraud, is reasonably anticipated after further investigation or discovery.

67.

By way of example, however, all Defendants specifically used the U.S. Postal Service, or interstate wires, or caused the U.S. Postal Service or interstate wires, to deliver each and every document bearing false, deceptive, pretentious, and fraudulent workplace injury notification, insurance information, and/or other representation, falsely showing employers were the insurance companies and/ or their servicing agent, or that they were in fact self insured, between an unknown date to the present, and to deliver all of the following communications, among others, for the purpose of advancing, furthering, executing, and concealing Defendants' scheme:

a)      Fraudulent letter (SBWC form WC-1) sent by U.S. mail and/or wire to Chailland, from HA, on or about March 2007, containing distorted or fictitious information that Lumbermen and SBWC were expected to rely upon.

b)      Fraudulent letter (SBWC form WC-1) sent by U.S. mail and/or wire to Lumbermen, from Chailland, on or about March 2007 containing distorted or fictitious information that Lumbermen and SBWC were expected to rely upon.

c)      Medical updates, bills and replies, sent by U.S. mail and/or wire, to and from Chailland, from medical providers commencing on or about January, 2007 to present, where said medical providers relied upon fraudulent representations that Chailland was in fact, the workers compensation insurer.

d)      Medical updates, sent by U.S. mail and/or wire, to HA, commencing on or about January 2007 to present, whereby medical providers relied upon fraudulent representations that HA was in fact Plaintiff's direct employer.

e)      Medical updates, bills and replies, sent by U.S. mail and/or wire, to and from Chailland, from physical therapy providers commencing on or about January, 2007 to present, where said physical therapy providers relied upon fraudulent representations that Chailland was in fact, the workers compensation insurer.

68.

Each violation, as enumerated above, is a separate and distinct chargeable predicate act and violation of 18 U.S.C. §§ 1341 and/ or 1343, and Georgia Statute § O.C.G.A. 16-4-3(9)(A)(xxix).

69.

25

Employers have acquired and maintained an interest in and control of personal property, including money, through a pattern of racketeering activity.

71.

Plaintiff has been injured in his property or business by reason of Employers violations of 18 U.S.C. § 1962(c).

71.

Pursuant to 18 U.S.C. § 1964(c), plaintiff is entitled to recover threefold the damages he has sustained and his costs of suit, including reasonable attorney's fees.

72.

Plaintiff has been aggrieved and injured by reason of Defendants' violations of O.C.G.A. § 16-4-3(9)(A)(xxix) and is entitled to recover three times the actual damages sustained, plus costs, and reasonable attorneys fees.

73.

Employers' actions show willful misconduct, malice, fraud, wantonness, oppression and an entire want of care that would raise the presumption of conscious indifference to consequences, and specific intent to cause harm, entitling plaintiff to receive punitive damages sufficient to deter, penalize or punish Employers.

74.

Plaintiff is also an aggrieved person within the meaning of O.C.G.A. § 16-14-6(b). As a result, Plaintiff is entitled to appropriate preliminary and permanent injunctive relief.

75.

Pursuant to O.C.G.A. § 16-14-6(a), plaintiff asks the Court to issue appropriate orders and judgment requiring Employers to cease its illegal conduct and imposing reasonable restrictions upon Employers future activities sufficient to prohibit future violations of the law.

## Violation of O.C.G.A. §16-14-4(c) of the "Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act."

76.

Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1 – 75 as if fully restated hereinafter.

77.

Defendants have endeavored to violate O.C.G.A. § 16-14-4(a), in violation of O.C.G.A. § 16-14-4(c).

78.

Defendants have conspired with each other, and persons presently unknown, to violate O.C.G.A. § 16-14-4(a), in violation of O.C.G.A § 16-14-4(c).

79.

Defendants have committed overt acts, which are also acts of racketeering activity, in furtherance of the conspiracy. These overt acts include violations of O.C.G.A. § 16-14-3(9)(A)(xv), O.C.G.A. 16-4-3(9)(A)(xxix), and U.S.C. § 1341 and U.S.C. § 1343.

80.

Defendants have committed overt acts, by coercing, misleading, or attempting to coerce and mislead medical providers, in aid and furtherance of their goals.

81.

Defendants' violations of federal and Georgia RICO are intended to, and do in fact, deprive Plaintiff, and similarly injured and aggrieved workers, of workers compensation benefits, and does also lower workers compensation insurance premiums. Plaintiff, and similarly injured and aggrieved workers, is the direct victim of these violations.

82.

Plaintiff has been aggrieved and injured by reason of Defendants' violations of O.C.G.A. § 16-14-4(c) and is entitled to recover three times the actual damages sustained.

### 83.

Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression and an entire want of care that would raise the presumption of conscious indifference to consequences, and specific intent to cause harm, entitling plaintiffs to receive punitive damages sufficient to deter, penalize or punish Defendants.

### 84.

Plaintiff is also an aggrieved person within the meaning of O.C.G.A. § 16-14-6(c). As a result, Plaintiff is entitled to appropriate preliminary and permanent injunctive relief.

### 85.

Pursuant to O.C.G.A. § 16-14-6(a), plaintiff asks the Court to issue appropriate orders and judgment requiring Employers to cease its illegal conduct and imposing reasonable restrictions upon Employers future activities sufficient to prohibit future violations of the law.

**Acquisition and Maintenance of an Interest in and Control of an *Enterprise* Engaged in a *Pattern of Racketeering Activity* in violation of 18 U.S.C. §§ (5), 1962(b)**

86.

Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein

87.

At all relevant times HA and Chailland, inclusive of it's agents and management staff, including Walters, Wingard, Mitchell, Doe ("Employers") as unrelated legal entities constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that they were and are "a group of persons associated in fact" as an ongoing organization and its members were and are functioning as a continuing unit with common purpose or goals related to, among others, preventing the SBWC and workers compensation insurers from learning the true number and severity of injuries their employees incur, thereby artificially (through fraudulent means)

88.

At various times and places as enumerated above, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO

*enterprise* of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), and 1962(b).

89.

During the ten (10) calendar years preceding January 1, 2007, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

90.

Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner, which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(b) *supra*.

91.

HA and Chailland are liable for it's agents', employees, and managerial staff misconduct as it had knowledge of, participated in, and benefited from a RICO enterprise.

31

92.

Plaintiff has been injured in his property or business by reason of Employers violations of 18 U.S.C. § 1962(b).

93.

The injuries suffered by plaintiff were caused by Defendants' violations of 18 U.S.C. § 1962(b).

94.

Pursuant to 18 U.S.C. § 1964(c), plaintiff is entitled to recover threefold the damages he has sustained and his costs of suit, including reasonable attorney's fees.

**Violation of 18 U.S.C. § 1962(c) Participition in a RICO Enterprise**

95.

Plaintiff realleges and incorporate by reference herein the allegations set forth in paragraphs 1 – 94 as if fully restated hereinafter.

96.

The foregoing conduct constitutes a violation of 18 U.S.C. § 1962(c).

97.

Plaintiff has been injured in his property by reason Defendants' violations of 18 U.S.C. § 1962(c).

98.

The injuries suffered by plaintiff were caused by Defendants' violations of 18 U.S.C. § 1962(c).

99.

Pursuant to 18 U.S.C. § 1964(c), plaintiff is entitled to recover threefold the damages he has sustained and his costs of suit, including reasonable attorney's fees.

**Violation of 18 U.S.C. § 1962(d)**

100.

Plaintiff realleges and incorporate by reference herein the allegations set forth in paragraphs 1 – 99 as if fully restated hereinafter.

101.

All Defendants did conspire to acquire and maintain an interest in a RICO *enterprise* engaged in a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(b) and (d).

102.

At various times and places partially enumerated in this Complaint, all Defendants did also conspire to conduct and participate, directly or indirectly, in said RICO *enterprise* through a *pattern of racketeering activity*, committed in

33

violation of 18 U.S.C. §§ 1962(c) and (d).  In particular, Defendants intend to further the endeavors of the enterprise, which, if completed, would satisfy all of the elements of a substantive RICO criminal offense and adopted the goal of furthering or facilitating the criminal endeavor.

### 103.

During the ten (10) calendar years preceding March 1, 2003 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(B), in violation of 18 U.S.C. 1962(d).

### 104.

Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of 18 U.S.C. 1962(d) (Prohibited activities *supra*). Plaintiff has been injured in his property by reason Defendants' violations of 18 U.S.C. § 1962(c).

### 105.

The injuries suffered by plaintiff were caused by Defendants' violations of 18 U.S.C. § 1962(d).

106.

Pursuant to 18 U.S.C. § 1964(c), plaintiff is entitled to recover threefold the damages he has sustained and his costs of suit, including reasonable attorney's fees.

## Unjust Enrichment in Violation of Georgia Law

107.

Defendants' violations of Federal and Georgia RICO are intended to, and do in fact, deprive Plaintiff, and similarly injured and aggrieved workers, of workers compensation benefits, and does also permit Employer to reap substantial savings from lower workers compensation insurance premiums.

108.

The savings that Employer has been able to achieve and continues to achieve through its illegal denial of workers compensation has been unjustly and inequitably conferred on Employer at the expense of its hourly workers who are injured while performing work functions on Employers behalf. These cost savings permit Employer to earn larger profits than it would be able to earn if it did provide workers compensation in accordance with Georgia law and SBWC Rules.

109.

Under the circumstances, Employers h ave been u njustly enriched at t he expense of the Plaintiffs and all similarly injured and aggrieved workers. Employers therefore should be ordered to disgorge its unlawful profits or otherwise return the full amount of any wage savings and worker's compensation savings that are the direct and proximate result of Employers' unlawful conduct.

## Lumbermens, Cambridge, and DeMello has Conspired to Violate §16-14-4(c) of the "Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act."

110.

Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1 - 109 as if fully restated hereinafter.

111.

Lumbermen, Cambridge, DeMello, and other Defendants, have conspired with each other, and persons presently unknown, to violate O.C.G.A. § 16-14-4(a), in violation of O.C.G.A § 16-14-4(c) in that Lumbermen, Cambridge, and DeMello have participated both directly and indirectly with a RICO Enterprise, as previously described.

112.

Lumbermen and Cambridge are liable for it's agents', employees, and managerial staff misconduct as it had knowledge of, participated in, and benefited from their actions.

113.

Defendants have endeavored to violate O.C.G.A. § 16-14-4(a), in violation of O.C.G.A. § 16-14-4(c).

114.

Lumbermen, Cambridge, DeMello, and other Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts, i n the l ast 1 0 y ears, t hat a re i temized in O.C.G.A. § 16-14-3(9)(A)(xv), O.C.G.A. 16-4-3(9)(A)(xxix), and U.S.C. § 1341-and/ or U.S.C. § 1343. These overt acts, which are also acts of racketeering activity, in matters within jurisdiction of state or political subdivisions, in furtherance of the alleged conspiracy consist of:

a) Failure to file SBWC form WC-1, "Notice of Injury," as required by law. (Willful concealment)

b) Failure to file SBWC form for "Change of Condition," as required by law. (Willful concealment)

c)      Failure to file SBWC form claiming the legal right to unilaterally suspend benefits – before actually doing so, as required by law. (Willful concealment)

### 115.

Using the US Mail for the delivery of fraudulent compliance with SBWC form WC-240 "Return to Work" documents. (Transmission of Fraudulent Documents)

### 116.

Defendants' violations of federal and Georgia RICO are intended to, and do in fact, deprive Plaintiff, and similarly injured and aggrieved workers, of present, and future workers compensation benefits, and does also lower insurance company payouts of rightfully owed monies.  Plaintiff, and similarly injured and aggrieved workers, is the direct victim of these violations.

### 117.

Plaintiff has been aggrieved and injured by reason of Defendants' violations of O.C.G.A. § 16-14-4(c) and is entitled to recover three times the actual damages sustained.

### 118.

Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression and an entire want of care that would raise the presumption of conscious indifference to consequences, and specific intent to cause harm, entitling plaintiffs to receive punitive damages sufficient to deter, penalize or punish Defendants.

119.

Plaintiff is also an aggrieved person within the meaning of O.C.G.A. § 16-14-6(c). As a result, Plaintiff is entitled to appropriate preliminary and permanent injunctive relief.

120.

Pursuant to O.C.G.A. § 16-14-6(a), plaintiff asks the Court to issue appropriate orders and judgment requiring Employers to cease its illegal conduct and imposing reasonable restrictions upon all Defendants future activities sufficient to prohibit future violations of the law.

**Plaintiff is entitled to Workers Compensation Benefits in accordance with Georgia State Board of Workers Compensation Rules and O.C.G.A. § 34-9-1 et. Seq.**

121.

Plaintiff sustained an injury on January 19, 2007, while in the employ of Chailland and leased to HA. This injury arose out of, and in the course this employment (Plaintiff expressly states that none of the other claims made apart of this petition arose out of and/ or in the course of employment.)

122.

This matter has been reviewed, through submission of pre filing motion, by an Administrative Law Judge, who has decreed this injury to be compensable, and that a hearing is necessary to determine benefits. Ruling attached as Exhibit 1.

123.

This workers compensation claim requires the consideration of evidence that includes Fraud, RICO, Pattern and Practice evidence, which is not provable in an administrative forum. Likewise resolution of the other claims made apart of this petition requires resolution of Workers Compensation claim t o properly v alue these claims.

124.

Plaintiff is entitled to medical benefits, payment for loss time and lower future earnings, and permanent partial disability payments.

125.

Significant events in chronological order in support of this claim:

40

a)      Injury occurred on Friday, January 19, 2007.  Management notified within minutes.  Medical care initiated within a couple of hours (Treating M.D. orders no driving company vehicles and light-duty only.)

b)      Plaintiff presented Monday, January 12, 2007, for light-duty assignment, but was unable to wok once on company premises.  Walters notified of inability to work, and informed Plaintiff of light-duty assignment. Plaintiff advised Walters he was unable to perform the offered light-duty work and signed a statement indicating this.

c)      24 hours pay in lieu of workers compensation received.

d)      Plaintiff consents to telephone interview with Demello.  Plaintiff and Demello review the accident and agree on light duty job functions.  Demello never calls back giving start date, and acknowledging Employer's acceptance of offer to perform light-duty work.

e)      April 2007, HA terminates Plaintiff's employment.

f)      No notices of any kind filed with SBWC or copies of any kind sent to Plaintiff prior to Change-of-Condition.

g)      Change-of-Condition:    Plaintiff underwent right shoulder surgery in August 2007.

h)    One workers compensation check in the amount of $450 received approximately 3 weeks after surgery.

i)    Letter from DeMello, purporting to comply with SBWC return-to-work procedures (light-duty) received.  Copy attached as Exhibit 2.

      This document is insufficient for return-to-work procedures since it:

          i.   Fails to use SBWC form WC-240 as required by law;

          ii.  Fails to give ten days notice as required by law;

          iii. Fails to show written physician approval as required by law;

          iv.  Fails to show starting date as required by law;

          v.   Fails to show the hours to be worked as required by law;

          vi.  Fails to show the rate of payment as required by law;

          vii. Fails to show the location of the job.

j)    No notices of any kind were filed with SBWC or copies of any kind sent to Plaintiff prior to next Change-of-Condition.

k)    Plaintiff files claim with SBWC

l)    Change-of-Condition: January 2008, Plaintiff undergoes right wrist surgery.

m)    11 benefit checks in the amount of $450 each received.

n)    Attorney for Defendants send SBWC form WC-240 to Plaintiff.

o)      Plaintiff sends letter to Defendants Attorney indicating his inability to comply with this form requirements and requested clarification and accommodation so Plaintiff could return to work (i.e. Plaintiff was taking mind dulling, legally intoxicating, narcotics, and requested permission to work while under the influence of these medically necessary and physician prescribed medications – HA has a company policy prohibiting being under said influence while on duty, and enforces this with random drug tests and termination if testing positive.) Defendant's attorney never responded.

p)      Treating Physician places permanent restrictions on overhead work.

q)      Treating Physician documents that Plaintiff is at Maximum Medical Improvement (MMI) and will never return to his previous occupation as a paramedic.

r)      Plaintiff will likely be on medication, related to this injury, for the rest of his life.  Defendant, in September 2008, denied a prescription refill, and Plaintiff paid cash for said refill.  The matter was referred to Defendants attorney, who indicated there would be no more problems.

125)   Defendant again denied a prescription refill in December 2008.

126.

Plaintiff is entitled to medical benefits, as may be medically necessary for this injury.   Defendants, until recently had substantially complied with these obligations. Pursuant to O.C.G.A. § 34-9-1 et. Seq., plaintiff asks the Court to issue Declaratory and Injunctive orders to bring Defendants into compliance with the law, and ensuring continued medical treatment.

127.

Pursuant to O.C.G.A. § 34-9-1 et. Seq., Plaintiff is entitled to compensation for Temporary Total Disability (TTD), Permanent Partial Disability (PPD), and Temporary Partial Disability (TPD), and requests payment of amounts as determined at Trial.

## Violation of O.C.G.A. § 33-6-3 Unfair methods of competition or unfair and deceptive acts or practices prohibited

128.

Demello acting for herself and on behalf, and in concert with, Cambridge and Lumbermen, violated O.C.G.A. § 33-6-3, by causing directly or indirectly, to be made, published, and/ or disseminated, a letter, containing assertions, representations, and/ or statements which were untrue, deceptive, and/ or

44

misleading and made illegal in O.C.G.A. § 33-6-4 et seq. This letter is attached as Exhibit 2.

129.

This letter purports to comply with O.C.G.A. § 34-9-240 and Board Rule 240 requirements, but:

    i.  Fails to use SBWC form WC-240 as required by law;

    ii.  Fails to give ten days notice as required by law;

    iii.  Fails to show written physician approval as required by law;

    iv.  Fails to show starting date as required by law;

    v.  Fails to show the hours to be worked as required by law;

    vi.  Fails to show the rate of payment as required by law;

    vii.  Fails to show the location of the job.

130.

O.C.G.A. § 34-9-240 and Board Rule 240 requirements further require that where benefits are being paid, with, or without an award, that they may only be discontinued only after very specific tasks are completed, and then under specific circumstances. In the instant claim, both a completed form WC-240 and form WC-2 are required to be submitted to the SBWC and Plaintiff prior to discontinuing loss-time benefits – Which they failed to do.

131.

Defendants relied on this fraudulent document, and Plaintiff's non-compliance with it, to suspend payment of benefits.

132.

The intended and expected purpose of this document was to entice Plaintiff to voluntarily, albeit under the belief of legal compliance, return to work and thereby waive and forfeit certain rights and protections available to him under Workers Compensation Rules and Regulations.

133.

Pursuant to O.C.G.A. § 33-6-4 et. seq., Plaintiff is entitled to compensation for all lost income as a result of DeMello, Cambridge, and Lumbermen's actions resulting from this fraudulent letter.

134.

Pursuant to O.C.G.A. § 33-6-4 et. Seq., Plaintiff is entitled to punitive or exemplary damages in an amount as may be determined by the trier of fact since this violation was intentional.

135.

Pursuant to O.C.G.A. § 33-6-4 et. seq., Plaintiff is entitled to recover attorney's fees and costs of litigation.

136.

The remedies provided in O.C.G.A. § 33-6-4 et. seq. are sought and intended to be in addition to, and cumulative of all other remedies provided by law.

**Intentional Infliction of Emotional Distress**

137.

Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1 – 136 as if fully restated hereinafter.

138.

DeMello acting for herself and on behalf, and in concert with, Cambridge and Lumbermen, sought to intentionally inflict Emotional Distress onto Plaintiff

139.

Plaintiff had a legal right to expect timely payments of loss-time benefits to be paid according to law.

140.

Using fraudulent means, and concealing facts from government entities, the appearance of legitimacy was portrayed.

141.

During December 2007 and January 2008, Plaintiff had wrist surgery denied twice without a reason being given to either Plaintiff or his treating Surgeon.

142.

In January 2008, through Defendants' attorney, Zon Stine, Defendants offered Plaintiff $4000 (four thousand dollars) in lieu of surgery, and to settle all outstanding claims.

143.

Defendants' conduct was intended to cause emotional distress and desperation whereby they could gain a more favorable resolution to this workers compensation claim.

144.

Defendants' w ere aware that P laintiff was v ulnerable d ue t o injury, t he inability to work, recent surgery, the need for additional surgery, and the lack of other income, and sought to use this situation unfairly against him.

145.

Defendants' conduct was is extreme and outrageous.

146.

48

Plaintiff did in fact severely suffer anxiety, worry, shock, fear, and intrepidation as a result of Defendants' illegal actions.

147.

Plaintiff is entitled to compensatory damages for loss of income benefits.

148.

Plaintiff is entitled to compensatory damages for injury to his peace, happiness, or feelings as determined by the enlightened conscious of a jury.

149.

As Defendants' conduct was intentional, Plaintiff is entitled to exemplary damages to punish, and prevent such future conduct.


## **Intentional Infliction of Emotional Distress**

150.

Walters, acting for personal animus, sought to intentionally inflict Emotional Distress onto Plaintiff.

151.

Walters used his position of authority and powers of being a supervisor to affect this emotional distress.

152.

Walters conduct was continuous, and of an escalating nature, with the significant events as follows:

a)     Such conduct started at about a time whereby Plaintiff complained to Wingard about Walters personal conduct in dealing with female EMT's. Such conduct is generally considered sexual harassment whereby he would force himself on them by such actions as running his fingers through their hair even though they would attempt to push his hands away and tell him to quit, grind his groin into their buttocks, and by information and belief did position himself on the outside of a window where he would watch a female EMT bath (completely nude).

b)     His conduct further escalated after Plaintiff had discovered his mother in c ardiac a rrest, ( after work hours), initiated C PR w ithin 3 m inutes o f cardiac arrest occurrence, and called 911. The attending paramedic had failed to stock his truck, and lacked oxygen, transcutaneous pacing pads, and had improperly intubated her. His failure to meet accepted standard-of-care, in Plaintiff's opinion, contributed to the death of his mother. Walters inquired how this incident might affect business operations for HA in the Griffin area. Plaintiff expressed that he held no animosity toward the hospital or anyone working in the emergency room at the time of her death,

50

and that Plaintiff's mother had worked at this hospital for 20+ years prior to retirement, and personally knew several of them. Plaintiff did express that he held the attending paramedic accountable for his failure to properly act, but that since each were on different shifts there would be no conflict.

c)      Knowing this, Walters then transferred Plaintiff to the very shift Plaintiff had told him he could not emotionally survive working on due to this individual.  Plaintiff discussed this situation with Walters, in person, at the Griffin office, and Walters remarked, "Then quit." After a couple of months this matter was addressed by Wingard, who was also aware of the events surrounding Plaintiff's mother's death, and to Wingard's credit, both arranged a conference that included, Plaintiff, Walters, and Wingard, and expressed outrage and displeasure over Plaintiff's transfer in this manner. Plaintiff was restored to his previous shift.

d)      Walters again escalated his personal attacks on the night of Friday, January 19, 2007.  Plaintiff (with partner) were dispatched on a call to Sylvan Grove Hospital, in Jackson GA, to transfer a patient to her private residence in the country, as is customary upon hospital discharge when a patient is unable to be transported by personal vehicle.  On arrival, and after making patient contact, it was learned that the patient would not fit on the

stretcher due to her girth, secondary to her weighing, according to hospital scales that day, 425 pounds. This patient also required continuous oxygen.

Partner, and Plaintiff, notified dispatch, at separate times, of the need for the bariatric s tretcher and t hat a dditional h elp w as n eeded t o s afely manage this patient.  Walters stated the crew was to, "Let her hang off the side" (of the stretcher).  Plaintiff requested dispatch call Wingard for help in complying with hospital desires, and reduce legal exposure for patient injuries, should this occur due to Walters's directive.  Walters then directed dispatch not to call Wingard, and then relented as to the bariatric stretcher (due to hospital request).  While at the Riverdale station, picking up the bariatric stretcher, Plaintiff and Walters engaged in a discussion about the safety of this call without additional help.  Walters finished the conversation with promises of reprimand and/or job termination should Plaintiff refuse this call.

### 153.

Georgia Department of Human Resources, Division of Public Health, who is charged with administrating Emergency Medical Services in Georgia, has published and disseminated memos to EMT's, through their employers, reminding

them that failure to adhere to Standing Orders and Company Directives may result in Certification (Licensure) revocation or suspension.

154.

At the very least, Plaintiff, and any other EMT, would become unemployable should they refuse to handle any call dispatched to. For the success of any EMS system, EMT's are quite simply, not in a position to pick and choose which calls they would prefer to handle.

155.

A patient weight of 425lbs, combined with a 110 lb stretcher, and an additional 30 lbs for oxygen and other medical apparatus, required Plaintiff and his partner to manage approximately 565 lbs in what was expected to be, and was, a sloped and slippery ground. This is about twice the weight that is usual and customary, for a male/ female crew, to attempt.

156.

Walters intentionally, and with malice, placed plaintiff in the untenable position of having to choose between a continuing EMS career and personal safety.

157.

Such conduct is extreme, outrageous, and unconscionable.

158.

Plaintiff did in fact severely suffer anxiety, worry, shock, fear, and intrepidation as a result of Defendants' actions.

159.

Plaintiff's physical injury on the night of Friday, January 19, 2007 (which is a separate and distinct matter) occurred as a result of this call. Plaintiff's partner also required emergency care at Southern Regional Hospital emergency room.

160.

Plaintiff is entitled to compensatory damages for injury to his peace, happiness, or feelings as determined by the enlightened conscious of a jury.

161.

As Walters' conduct was intentional, Plaintiff is entitled to exemplary damages to punish, and prevent such future conduct.

**Prayer for Relief**

Plaintiff, Bennon L. Prine, Jr. prays for judgment and other relief as follows:

A.  Judgment in an amount equal to three times the actual damages sustained by him, pursuant to 18 U.S .C. § 1964(c);

B.  Judgment in an amount equal to three times the actual damages sustained by him, pursuant to O.C.G.A. § 16-14-6(c);

54

C.    Attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred, pursuant to O.C.G .A. § 16-14-6(c) and 18 U.S.C. § 1964(c);

D.    Appropriate orders and judgments prohibiting Defendants from engaging in the violations of law alleged herein, pursuant to O.C.G.A. § 16-14-4(a) and (b);

E.    Judgment of an amount to be proven at trial that requires Defendants to disgorge any unlawful profits or otherwise return the full amount of its unjust enrichment;

F.    Actual damages as determined by a Jury on other Tort claims;

G.    Exemplary damages where appropriate;

H.    Medical and Money benefits as entitled to under Georgia Workers Compensation Laws;

I.    Trial by jury; and;

J.    Such other relief as the Court deems just and proper.

Respectfully submitted this  20  day of January 2009.


Bennon L. Prine, Jr.  Pro Se
P.O. Box 93
Griffin, GA  30224
bprine@peoplepc.com
(770) 227-2439